UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

GWENDOLYN HICKERSON                           CASE NO. 18-10469
    DEBTOR                                              CHAPTER 7

TOWER CREDIT, INC.
    PLAINTIFF

v.                                                                           ADV. NO. 18-1035

GWENDOLYN HICKERSON
    DEFENDANT

**MEMORANDUM OPINION**

Tower Credit claimed that Gwendolyn Hickerson's debt to it is nondischargeable under 11 U.S.C. §523(a)(2)(B) because she misled the lender on two loan applications. Ms. Hickerson failed to file Rule 26 disclosures or respond to Tower's Requests for Admission, and so is deemed to have admitted that she intended to deceive Tower in borrowing the money. Faced with that, she gamely contends that the debt still should be dischargeable because Tower unreasonably relied on her loan applications. For the reasons that follow, Tower's complaint is dismissed.

FACTS

Gwendolyn Hickerson[1] applied for her first Tower Credit loan in 2011. A Tower employee completed Hickerson's application, which lists among her obligations a debt to "F&C" for a 2000 Chevy Malibu, as well as debts to Credit Acceptance, the Department of Education

---

[1] The debtor and her mother share a name, a fact that will become important in the analysis that follows. To attempt to minimize confusion, this opinion refers to the debtor as "Gwendolyn Hickerson" and to her mother as "Gwendolyn D. Hickerson."

and Sallie Mae.[2]  The application also disclosed an outstanding November 2010 loan to Tower secured by a 2002 Toyota Camry.[3]

The debtor's budget for the 2011 loan application[4] represented that she paid no rent.  It also stated that she had no food or utilities expenses; indeed the only expenses it reflected were $95 for a cell phone, $50 for clothing, $100 for transportation (gas and maintenance), $40 for charitable contributions and $230 for car insurance.  The debtor's net disposable monthly income was $333 according to Tower's calculation, enough to make the $313.01 monthly payments on the loan she sought.

After the debtor signed the loan application form certifying the accuracy of all information on it, Tower loaned her $5,778.25.[5]  Later the debtor defaulted on the loan and Tower sued her, obtaining a judgment in May 2013 for $4,728.81, plus attorney's fees, court costs and annual interest of twenty-nine percent.[6]

---

[2] Tower exhibit no. 3.

[3] Stephen Binning, Tower's president, reacted with surprise when informed of this while testifying at trial.  He testified that these entries on the loan document were mistakes, speculating that because the debtor and her mother have the same name, the Tower employee who filled in the loan application accidentally included information for the debtor's mother on the debtor's form.  He insisted that he reviewed the debtor's account before testifying in court and confirmed that the debtor first borrowed money from Tower in September 2011.

[4] The debtor vouched for the accuracy of the information, signing the budget worksheet certifying that "all statements made are completely true."  Tower exhibit no. 5.

[5] Tower exhibit no. 6.

[6] Tower exhibit no. 7.

Nearly a year and a half later, and despite the prior default and judgment,[7] Gwendolyn Hickerson again approached Tower for a loan "to catchup [*sic*] car note."[8]  The October 2014 loan application claimed that the debtor and her boyfriend split monthly rent of $640 for an apartment they shared, the debtor's share being $320.  The application again listed debts to the Department of Education and Sallie Mae, as well as the debtor's 2011 outstanding loan to Tower (by then ripened into a judgment), and a September 2012 debt to Tower secured by the 2002 Toyota Camry, her mother's vehicle.

The budget worksheet for the 2014 loan[9] claims that the debtor's total monthly expenses were $704, comprising her half of the apartment rent, $50 for electricity, $30 for telephone service, $125 for food, $110 for car insurance and $69 for student loan payments.  The worksheet for this loan showed net monthly disposable income of $348.  The debtor again signed a budget worksheet certifying that "all statements made about your income and expenses are correct and complete."[10]  Gwendolyn Hickerson also defaulted on the second note to Tower, which sued her and obtained a second judgment[11] in June 2017.

Tower now claims that the debtor lied during the 2011 loan application process by not disclosing that she gave her mother between $400 to $500 each month to defray her mother's expenses, including some relating to her cancer treatment.  Tower maintains that had Gwendolyn

---

[7]  Tower's business model is perplexing.  Nothing in the record suggests that when it extended credit for a second time Tower actually knew that the judgment debtor had misled it.  All the same, Tower's continuing relationship with the debtor and its conclusion calls to mind the timeworn proverb "Fool me once, shame on you, fool me twice, shame on me."

[8]  Tower exhibit no. 9.

[9]  Tower exhibit no. 12.

[10]  *Id*.

[11]  Tower exhibit no. 14.

Hickerson disclosed the payments to her mother, they would have revealed that she was unable to repay the proposed loan in 2011. Tower contends that it only learned of her deception during a Fed. R. Bankr. P. Rule 2004 examination after she filed bankruptcy in 2018.

Tower also complains that the debtor deceived it into making the 2014 loan. It alleges that at the same Rule 2004 exam during which it learned of the payments to her mother at the time of her 2011 loan, it also learned that the debtor in fact lived alone when she contracted the second loan, and so was alone liable for the monthly rent. It also argues that the debtor's bankruptcy schedules[12] revealed outstanding payday loans she did not disclose to Tower when she applied for the 2014 loan and that it would not have made the loan had it known of them.

The debtor failed to respond to Tower's Requests for Admission.[13] Pursuant to Fed. R. Civ. P. 36,[14] which Fed. R. Bankr. P. 7036 makes applicable here, the debtor is deemed to have admitted that:

1. she owed payday or check cashing loans when she applied for her 2011 and 2014 loans from Tower;

2. she claimed on her 2011 and 2014 loan applications that she owed no pay day loans;

3. she had a rental expense of between $400 and $500 when she applied for the 2011 loan;

4. she had a rental expense of $650 when she applied for the 2014 loan;

---

[12] Tower exhibit no. 15.

[13] Tower exhibit no. 1. According to the certificate of service Tower offered into evidence [Tower exhibit no. 2], Tower's counsel mailed the Interrogatories, Request for Admissions and Request for Production of Documents to the debtor and her counsel on September 27, 2018.

[14] Fed. R. Civ. P. 36(a)(3): "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

5. on both her 2011 and 2014 loan applications, she claimed that she was paying less rent than she actually was paying;

6. she obtained the loans by use of false pretenses, false representations, and actual fraud; and

7. she intended to deceive Tower by using a materially false written statement respecting her financial condition.

## ANALYSIS

Tower relies on Bankruptcy Code section 523(a)(2)(B), making nondischargeable debts "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such ... credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive."

A written statement is materially false for purposes of applying section 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by *misrepresenting information of the type which would normally affect the decision to grant credit*.'"[15]

The debtor is deemed to have admitted that she owed payday loans in both 2011 and 2014 when she sought the loans from Tower. Failure to disclose payday loans can constitute a material omission from a loan application within the meaning of 523(a)(2)(B). *See GulfSouth*

---

[15] *Norris v. First National Bank in Luling (Matter of Norris),* 70 F.3d 27, 30 (5th Cir.1995).

*Credit, Inc. v Perry (In re Perry)*, 547 B.R. 650 (M.D. La. 2016). Stephen Binning testified that Tower would not have made the loans to Gwendolyn Hickerson had it known of her outstanding payday loans. He also testified that Tower's policy was to not loan to borrowers with outstanding payday loans unless they borrow enough to pay off those loans. Accordingly, the omission of the payday loans from the debtor's 2011 and 2014 credit applications was material.

Even though the debtor is bound by her deemed admissions, Tower still must prove that it reasonably relied on the debtor's applications when it made both the 2011 and 2014 loans. In the Fifth Circuit:

> The reasonableness of a creditor's reliance ... should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.[16]

A basic principle of bankruptcy law is that exceptions to discharge are to be strictly construed against the creditor and liberally construed in favor of the debtor to facilitate the debtor's "fresh start."[17] Given this, the Fifth Circuit's mandate is clear: lenders cannot blithely rely on statements in loan applications in the face of facts that should indicate the borrower's statements are not trustworthy.

---

[16] *Coston v. Bank of Malvern (Matter of Coston)*, 991 F.2d 257, 261 (5th Cir.1993). *See also GulfSouth Credit, Inc. v. Perry (In re Perry)*, 547 B.R. 650, 655 (Bankr. M.D. La. 2016).

[17] *Hudson v. Raggio & Raggio, Inc. (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

*Tower did not reasonably rely on the debtor's 2011 loan application.*

Tower maintains that it relied on the information on the debtor's 2011 loan application to assess her creditworthiness, but—due to an inadvertent error by a Tower employee—Tower's professed reliance is not credible. Testimony elicited at trial established that Tower's own employee, who completed the application the debtor signed, included erroneous information on the application. Specifically, the debtor's application mistakenly included information pertaining to a 2010 loan Tower had made to another borrower—the debtor's mother—which required a monthly payment of $291.[18] Despite its belief that the debtor owed it $291 each month for an outstanding prior loan, that monthly payment was conspicuously absent from debtor's budget worksheet for her 2011 loan.[19]

Tower should have seen by comparing the loan documents that the debtor's budget did not include the $291 loan payment it mistakenly listed as the debtor's obligation. Including that payment in Tower's calculation of the debtor's budget would have made plain that the debtor lacked the money to pay Tower $313.01 every month on the loan she sought.[20] Additionally, had Tower examined the loan documents it claims to have relied on in making the loan, it either would have discovered its error in including the 2010 loan information or it would have recognized that the debtor's proposed budget did not include payments on the loan it thought she owed.[21] The fact that Tower neither discovered the erroneous information on the application or,

---

[18] Tower exhibit no. 3.

[19] Tower exhibit no. 5.

[20] Tower exhibit no. 6.

[21] For the purposes of this analysis, whether the debtor was or was not obligated on the 2010 loan is irrelevant. The key issue is whether Tower *relied* on the written representation of the debtor's financial picture as it claims to have done.

even more surprisingly, failed to notice the absence of payments on a loan it believed the debtor owed it[22] undermines Tower's insistence that it reasonably relied on the loan application to extend credit to the defendant. Even "minimal investigation" would have revealed the inaccuracy of the representations.[23] Accordingly, Tower has failed to carry its burden of proving that it reasonably relied on the debtor's statements in the 2011 loan application.

### *Tower did not reasonably rely on the debtor's 2014 loan application.*

Despite holding a judgment against the debtor for her defaulted prior loan, in 2014 Tower once again loaned the debtor money, this time $4,669.13. The debtor's 2014 loan application reflects two outstanding loans to Tower Credit—one, the defaulted 2011 loan, and the other, a 2012 loan secured by a 2002 Toyota Camry. According to Steven Binning, the latter was a loan the debtor signed as a co-maker for her mother.

As with the prior loan, Tower's success on this claim hinges on proof that it reasonably relied on the debtor's loan application. However, Tower failed to carry its burden on this point. The 2014 loan application included no provision for paying the judgment it already held against the debtor. Additionally, the $69 budgeted monthly to pay student loan debt is well below the scheduled monthly payment of $278 listed on page one of the debtor's application.[24] Nor does the application provide for any payment on the debtor's obligation to Sallie Mae.[25]

These "red flags" preclude a finding that Tower reasonably relied on the debtor's 2014 loan application. The debtor's certification that all statements about her income and expenses

---

[22] That the errors were not discovered by the debtor is also irrelevant.

[23] *See* n. 16.

[24] Tower exhibit no. 9.

[25] *Id.*

were true and correct[26] did not relieve Tower of responsibility for checking the information, especially because it was dealing with a debtor who defaulted on an earlier obligation that culminated in a judgment.

In an effort to make Tower's reliance on the 2014 application appear reasonable, Mr. Binning testified that ninety percent or more of Tower's borrowers have financial problems and are in arrears on their debts to Tower. He testified that Tower works with these borrowers to develop plans for paying their debts even after it has obtained judgments against them. But Binning's subjective conclusion that making the 2014 loan was reasonable because Tower typically conducts business with similarly situated borrowers does not objectively make the loan reasonable. *See USAmeribank v. Strength (In re Strength),* 562 B.R. 799 (Bankr. M.D. Ala. 2016) (bank's compliance with industry practices in connection with prepetition loan to debtor did not make the bank's reliance on the debtor's materially false financial statement "reasonable" within the meaning of §523(a)(2)(B)).

Given the number of obligations missing from the debtor's budget that Tower knew or should have known about from its prior dealings with the defendant, it did not reasonably rely on the contents of the 2014 application for a loan that required her to pay $270.34 every month.

The debtor makes two arguments regarding Tower's reliance on her loan application. Neither is persuasive.

First, she claims that Tower knew the debtor did not have a car although the purpose of the loan was to make car payments. But the debtor was a co-maker on her mother's loan in 2012, so Tower's reliance on the representation that the loan was for car payments was not

---

[26] Tower exhibit no. 13.

unreasonable. Indeed, the debtor's own loan application budget shows a $110 monthly expense for vehicle insurance.[27]

Second, the debtor argues that she and her mother—a co-maker on the debtor's 2014 note[28]—each earned enough to make the monthly payments on the note. Given this, she reasons that Tower did not rely on the debtor's loan application, inviting the conclusion that Tower didn't intend to hold the debtor accountable should her mother default.[29] But this ignores the fact that both the debtor and her mother agreed to be solidarily liable on the Tower obligation.[30] Further, the defendant offered no evidence of Gwendolyn D. Hickerson's ability to pay the loan.

## CONCLUSION

Tower failed to carry its burden of proving that it reasonably relied on the debtor's 2011 and 2014 loan applications so its complaint will be dismissed.

Baton Rouge, Louisiana, May 30, 2019.

s/ **Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[27] Tower exhibit no. 12.

[28] Tower exhibit no.13.

[29] Debtor's Pre-Trial Memorandum [P-20], p. 2.

[30] Tower exhibit no. 13, p. 1: "FOR VALUE RECEIVED, the undersigned (whether one or more) jointly, severally and solidarily, promise to pay to the order of the Lender stated above the Total of Payments shown above, in equal consecutive monthly installments as shown above, until the full amount of this Note shall be paid." La. Civ. Code art. 1794: "An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee."